# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SELENA R. GANTT, )
)
       Plaintiff, )
)
       v. ) Case No. CIV-17-234-SPS
)
COMMISSIONER of the Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

The claimant Selena R. Gantt requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was thirty-one years old at the time of the administrative hearing (Tr. 272, 279). She has a high school education, two years of college, and has worked as a waitress (Tr. 121, 311). The claimant alleges she has been unable to work since September 1, 2014, due to headaches, back problems, and psychological problems (Tr. 310).

**Procedural History**

On November 10, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 272-80). Her applications were denied. ALJ Daniel Curran conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 22, 2016 (Tr. 86-95). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) (Tr. 93). The ALJ then concluded

-3-

that the claimant was not disabled because she could return to her past relevant work as a waitress (Tr. 95).

**Review**

The claimant contends that the ALJ erred by failing to properly: (i) account for her back impairment in formulating her RFC, and (ii) evaluate her subjective statements. The Court agrees, and the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairment of obesity, and the non-severe impairments of bipolar disorder, posttraumatic stress disorder, and degenerative disc disease (Tr. 88-94). The relevant medical evidence reveals that the claimant injured her back at work in October 2006 (Tr. 809). An MRI of her lumbar spine conducted that month revealed a right lateral disc protrusion at L5-S1, right paracentral disc protrusion with annular tear at L4-5, and degenerative disc disease with disc bulge at L3-4 (Tr. 805-06). The claimant was treated with medications and an epidural steroid injection, which successfully treated her leg pain, but did not help her back pain (Tr. 807-10, 840-41). By November 2007, Dr. Michael Hahn indicated the claimant was at maximum medical improvement, and limited her to sedentary duty with no lifting greater than ten pounds, and no significant pushing, pulling, climbing, crawling, or stooping (Tr. 840).

Dr. Sung Choi performed a physical consultative examination of the claimant on January 31, 2015 (Tr. 794-801). He found the claimant had full range of motion in her cervical spine, thoracic spine, and lumbar spine, but noted some pain throughout motion of her lumbar spine with flexion, extension, and lateral bending (Tr. 800). Dr. Choi also noted

that the claimant had a safe, stable gait with appropriate speed (Tr. 801). He assessed the claimant with lumbago, uncomplicated pregnancy, anxiety, and depression (Tr. 801).

State agency physicians reviewed the record and determined that the claimant could perform the full range of light work (Tr. 152-54, 165-169).

On May 13, 2015, the claimant presented to Dr. Randall Hendricks with an exacerbation of low back pain from approximately three or four weeks earlier, and pain radiating into her left leg, ankle, and foot (Tr. 905). An MRI showed:

> . . . . a fairly sizeable L4-L5 disc herniation on the left with a pretty big fragment probably taking up 25-33% of the spinal canal . . . It does impinge the nerve. She has some mild spondylosis at L3-L4, some mild spondylosis at L5-S1, L2-L3, and L1-L2 look normal. You can see there are extruded fragments in the canal . . . .

(Tr. 905). Dr. Hendricks indicated that the claimant likely had degenerative discs for "many, many years," and that one finally ruptured (Tr. 905). On physical examination, Dr. Hendricks found a positive sciatic stretch, reduced range of motion, and difficulty walking on her heels and toes due to left leg pain (Tr. 906). Lumbar spine x-rays taken that day showed retrolisthesis and a clearly spondylotic L4-L5 disc, but a fairly normal lumbar lordosis and no instability pattern (Tr. 906). Dr. Hendricks first recommended conservative treatment, but when the claimant reported that the steroid injection made her pain worse and rendered her unable to walk for five days, he ultimately recommended a discectomy and fusion surgery (Tr. 902).

The claimant presented to the McAlester Regional Health Center Emergency Department on June 4, 2015, with low back pain radiating into her right leg. She was diagnosed with low back pain due to displacement of intervertebral disc (Tr. 890-93). The

same day, the claimant presented to Dr. Carol Gambrill with low back pain radiating into her left foot (Tr. 844). Dr. Gambrill diagnosed her with degenerative disc disease and encouraged her to follow-up with pain management and her neurosurgeon (Tr. 846).

The claimant then established care with Alpha Pain Management on September 23, 2015 (Tr. 924-26). She reported increased back pain since her epidural steroid shot as well as bilateral shoulder pain for the previous month and a half (Tr. 924). Range of motion testing revealed mild restriction of overhead reach, pain and tenderness over the anterior portion of the deltoid bilaterally, and intact strength in all her extremities (Tr. 925). The claimant's straight leg raise was to eighty-five degrees on the left with some increased back pain, and ninety degrees on the right with mild discomfort (Tr. 925). Dr. Mark Reiheld indicated that the claimant had good potential for rehabilitation, and recommended a treatment program that included weight loss and narcotic pain medication (Tr. 925). By December 15, 2015, the claimant reported that her medication regimen was working well, she lost twelve pounds, and she was trying to walk, but had "trouble" after about fifteen minutes (Tr. 933). At a follow-up appointment on January 12, 2016, a physical examination revealed that all of the claimant's extremities moved equally, she had a stable gait, and ambulated without an assistive device, but could not stand from a seated position without using her hands (Tr. 936).

On January 18, 2016, the claimant again saw Dr. Gambrill, who noted the claimant had an antalgic gait and muscle spasms in her lumbar spine (Tr. 919). Dr. Gambrill also noted the claimant had decreased flexion and side bending, that her lumbar forward flexion was limited to eighty degrees, and that she experienced pain with twisting and bending

(Tr. 919). She assessed the claimant with disc stenosis of intervertebral foramina of lumbar region (Tr. 920). The same day, Dr. Gambrill completed a medical opinion form regarding absences from work, stating that the claimant would be absent from work about three or more days per month due to severe back pain, right leg weakness, right arm pain, and right arm weakness (Tr. 908). Dr. Gambrill also completed forms regarding unskilled work requirements, sedentary work requirements, a clinical assessment of pain, and a physical RFC assessment (Tr. 909-16). In these forms she indicated, *inter alia*, both that the claimant could *and* could not stand/walk up to two hours in an eight-hour workday, could sit for about four hours in thirty minute increments, could not utilize both hands for manipulation, could not sustain activity at a pace and with the attention to task as would be required in the competitive workplace, and could not attend any employment on a sustained basis (Tr. 911, 914). She further indicated that the claimant's pain was irretractably and virtually incapacitating, that physical work activities would increase her pain to such an extent that rest and/or medication would be necessary, and that her pain would reduce basic mental work activities to such a degree that her functioning in the task would be inadequate or abandoned (Tr. 909). Additionally, Dr. Gambrill indicated that the claimant had a fair to poor prognosis, that her pain was ten out of ten without medication and five out of ten with medication, that her medication lasted for two or three hours, and that additional pain medication could cause nausea, dizziness, or drowsiness (Tr. 912). She also stated that the claimant would need to walk for ten minutes every hour, required an at will sit/stand option, required the use of an assistive device, and would need unscheduled breaks every two hours lasting forty-five minutes to an hour (Tr. 914). Dr. Gambrill found the clamant could

occasionally lift less than ten pounds, crouch/squat, and climb stairs; could rarely lift ten pounds and twist; and could never lift anything over twenty pounds, stoop (bend), or climb ladders (Tr. 914-15). As to manipulative limitations, Dr. Gambrill found that in an eight-hour workday, the claimant could use her left hand to grasp, turn, and twist objects one hundred percent of the time, but could not use her right hand at all; could use her left fingers for fine manipulations one hundred percent of the time, and her right fingers fifty percent of the time; and could use her left arm for reaching one hundred percent of the time, and her right arm twenty-five percent of the time (Tr. 915). As support for these opinions, Dr. Gambrill noted the claimant had severe back pain, right leg pain, right arm pain, and that she had decreased right leg strength (Tr. 911). Dr. Gambrill concluded that the limitations she found had been applicable for ten years (Tr. 916).

At the administrative hearing, the claimant testified that her back pain was an eight or nine on a ten-point scale every day, but that her medication reduced it to six or seven, that her pain sometimes radiated down both of her legs, and that it occasionally made her legs and feet numb (Tr. 111). As to specific limitations, the claimant testified that she could sit no longer than thirty minutes before needing to "take a minute to walk" due to back pain, could not walk "very far," requires something to hold her up if she walks "a distance" due to weakness in her back and legs, could not stand more than fifteen minutes, could not bend without the assistance of "something sturdy," and could not carry twenty-five pounds, but could hold twenty-five pounds for five minutes (Tr. 114-15).

In his written opinion at step two, the ALJ summarized the medical evidence related to the claimant's back impairment but did not specifically make a finding as to severity

(Tr. 88-92). At step four, the ALJ then noted that radiographic imaging documented the claimant's degenerative disc disease but concluded that the medical records did not provide a clinical correlation for such impairment, and that the medical signs and findings did not support a disabling degree of impairment (Tr. 94). The ALJ then determined that the claimant's degenerative disc disease was not a severe medically determinable impairment that functional limitations could be attributed to (Tr. 94). In support of these findings, the ALJ noted there were no treatment notes or medical sources documenting significant decreased range of motion in the claimant's spine; no objective evidence of significant muscle weakness or atrophy; no evidence of spinal-related motor, reflex, sensory, or neurological defects; and that Dr. Choi found minimal objective findings and attributed the claimant's complaints to her pregnancy and longstanding history of obesity (Tr. 94). As to the opinion evidence, the ALJ gave partial weight to the state agency physicians' opinions without explanation, and gave little weight to Dr. Hahn's opinion because it was not relevant to the period at issue (Tr. 94). The ALJ assigned very little weight to Dr. Gambrill's treating source opinion because it was not supported by her own treatment notes, the claimant's testimony, or the remainder of the medical record, and appeared to be based principally on the claimant's subjective reports and opinions (Tr. 94-95).

The claimant argues that the ALJ overlooked probative evidence when he declined to include any postural limitations in the RFC. Residual functional capacity is defined by the Social Security Regulations as what a claimant is capable of doing despite her mental and physical limitations. *Davidson v. Secretary of Health & Human Services*, 912 F.2d 1246, 1253 (10th Cir. 1990). RFC categories have been established based on the physical

demands of various kinds of work in the national economy. 20 C.F.R. §§ 404.1567, 416.967. RFC is a medical assessment based primarily on medical findings such as symptoms, signs, and laboratory results. Additionally, medical and non-medical sources also must be considered in determining the RFC. 20 C.F.R. §§ 404.1545(a), 416.945(a). When the ALJ is assessing the RFC, he "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i. e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

First, the Court notes that because the ALJ found that the claimant suffered from the severe impairment of obesity, any failure to find the claimant's back impairment severe at step two would ordinarily be harmless error because the ALJ would nevertheless be required to consider the effects of the impairments and account for them in formulating the claimant's RFC at step four. *See, e.g., Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'"), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123–24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523). *See also Hill v. Astrue,* 289 Fed. Appx. 289, 292 (10th Cir.

2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. The error here *was not* harmless, however, because the ALJ failed to account for the claimant's nonsevere impairments in assessing her RFC, instead adopting the state reviewing physicians' opinions that pre-dated much of the evidence related to her physical impairments. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments—both severe and nonsevere—in assessing her RFC. *See Id.* (In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original]; *McFerran v. Astrue,* 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Furthermore, the ALJ erred in assessing the claimant's RFC because he misstated evidence when he found that there were no treatment notes or medical sources documenting significant decreased range of motion in the claimant's spine. This assertion ignores the

evidence that *both* Dr. Hendricks and Dr. Gambrill found limited range of motion in the claimant's spine, which directly affect the claimant's mobility (Tr. 906, 919). "Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001).

Additionally, the ALJ failed to properly discuss substantial medical evidence that supported the claimant's testimony about the severity of her pain. Not only did the claimant undergo pain management therapy as she points out, she also consistently reported pain during her doctor visits, reported a further back injury in May 2015, was taking pain medications regularly, underwent spinal steroid injections that increased her pain, and had been recommended for a discectomy and fusion surgery. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Rather than engage in the proper analysis, here the ALJ relied upon disfavored boilerplate and a

recitation of the claimant's daily activities to discount her pain, which is error. *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) ("Nor does the ALJ's citation of 'daily activities' indicate substantial evidence refuting Frey's complaint of disabling pain or its credibility. . . . [T]he claimant had performed a few household tasks, had worked on his cars, and had driven on occasional recreational trips. . . . [S]poradic performance does not establish that a person is capable of engaging in substantial gainful activity."), *citing Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of all the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**